UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GRACE BORRANI,

                          Plaintiff,                      No. 17-CV-9397 (KMK)

        v.                                                <u>OPINION & ORDER</u>

NATIONSTAR MORTGAGE LLC, d/b/a Mr.
Cooper; and SHAPIRO, DICARO & BARAK, LLC,
attorneys for Nationstar Mortgage LLC,

                          Defendants.

<u>Appearances</u>

Grace Borrani
Yonkers, NY
*Pro Se Plaintiff*

Ashley L. Rose, Esq.
Laurence P. Chirch, Esq.
Sandelands Eyet LLP
Bedminster, NJ
*Counsel for Defendant Nationstar*

KENNETH M. KARAS, District Judge:

        Plaintiff Grace Borrani ("Plaintiff") brings this Action against Nationstar Mortgage LLC,

d/b/a Mr. Cooper ("Nationstar" or "Defendant"), and Shapiro, DiCaro & Barak, LLC

(collectively "Defendants"), alleging violations of various federal laws in connection with her

state court foreclosure proceeding, including the Racketeering Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. § 1961, the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, the Truth-In-Lending Act ("TILA"), 15 U.S.C. § 1601, the Real

Estate Settlement Procedures Act ("RESPA"), Title 12 U.S.C. §§ 2601-2617, and Wire Fraud

and Fraud and Deceit, 18 U.S.C. §§ 1343 and 1503.  Plaintiff also brings state common law

claims for unjust enrichment and intentional and/or negligent infliction of emotional distress. (Compl. (Dkt. No. 1).)[1]  Before the Court is Nationstar's Motion To Dismiss.  (Not. of Mot. (Dkt. No. 18).)  For the reasons stated herein, the Motion is granted.

## I.  Background

### A.  Factual Background

The facts recounted below are taken from Plaintiff's Complaint and the documents attached thereto and are assumed to be true for purposes of resolving the Motion.

Plaintiff resides or previously resided at 144 Lee Avenue, Yonkers, Westchester County, New York 10705.  (Compl. ¶ 15.)[2]  On December 4, 2013, Nationstar brought a foreclosure action against Plaintiff in the Supreme Court of the State of New York, County of Westchester, Index No. 70555/2013, alleging that Plaintiff had failed to make payments on her mortgage.  (Id. ¶¶ 16, 18.)  Plaintiff filed her Answer and Counterclaims on February 3, 2014.  Plaintiff's Affirmative Defenses were "[l]ack of [s]tanding, [n]o [h]older in [d]ue [c]ourse, [f]ailure to [p]rovide [r]equisite [n]otice . . . , [n]o [a]ccounting, [m]issing [a]ffirmation, [f]ailure to [v]erify [P]laintiff's [i]ncome, [s]ecuritized [n]ote [o]wned by [i]nvestors, [j]oinder, [and] [f]alse [p]retenses."  (Id. ¶ 19.)  Plaintiff's Counterclaim cited "violations of . . . TILA . . . violations of

---

[1] Plaintiff's Complaint names Nationstar Mortgage LLC, d/b/a Mr. Cooper, and separately Shapiro, DiCaro & Barak, LLC as Defendants.  (Compl. ¶¶ 13, 14.)  The Court issued an Order of Service as to those two Defendants on December 6, 2017.  (Dkt. No. 5.)  However, the summons was incorrectly issued as to "Nationstar Mortgage LLC d/b/a Mr. Cooper, Shapiro, Dicaro & Barak, LLC" as one Defendant, (Dkt. (entry for December 6, 2017)), so that Defendant Shapiro, DiCaro & Barak, LLC was never served and has never appeared in this case.  Plaintiff will have another opportunity to serve that Defendant.

[2] Plaintiff filed her Complaint before the foreclosure sale of her home was scheduled to take place.  This Court denied her request for a preliminary injunction to stop that sale.  (Dkt. No. 4.)  The Parties have not updated the Court as to whether Plaintiff still resides at the foreclosed property.

Regulation Z, violations of New York Banking Law, Article 12-D § 419 since Defendant received large amounts of Federal funding for said programs." (*Id.*)

Plaintiff alleges various procedural shortcomings in her state foreclosure proceedings. For example, Plaintiff alleges that Nationstar and their former attorneys, McCabe, Weisberg & Conway, P.C., allegedly presented an inadmissible, hearsay document, identified as Certificate of Merit Pursuant ("COM") pursuant to CPLR 3012-b, dated December 4, 2013, the day that Defendant Nationstar filed the Summons and Complaint for Foreclosure against Plaintiff. (*Id.* ¶ 34.) The "COM" was signed by an attorney from the firm, Natalie Giraldo, Esq., who claimed to have consulted with Ryan Paul Lacas, an Assistant Vice President at Nationstar. (*Id.* ¶ 35.) Plaintiff alleges that Defendants failed to authenticate such documents as required by law. (*Id.* ¶ 34.) Plaintiff alleges that there is no affidavit from Lacas swearing to facts alleged, nor is there any evidence of where Lacas is from. (*Id.* ¶ 35.) Plaintiff alleges that the COM was therefore inadmissible hearsay and its introduction by Defendants violated the New York State Rules of Professional Conduct. (*Id.*)

Plaintiff further alleges that Defendants failed to present their witnesses for cross-examination. (*Id.* ¶ 36.) Plaintiff argues that "[t]o prove a foreclosure claim, the bank must produce witnesses with knowledge of all relevant business records made since the date the loan was made," and that because here such evidence was not provided, the New York Supreme Court should have denied the bank's motion for summary judgment. (*Id.*) Plaintiff alleges that the bank's only witness was an out-of-state employee with insufficient knowledge of the loan, and that the bank did not have access to witnesses from prior servicers of the mortgage loan. (*Id.* ¶ 37.)

On March 18, 2016, Nationstar's motion for summary judgment was granted by the Westchester County Supreme Court, allegedly without any discovery having been exchanged. (Compl. ¶ 40.) A default judgment and an order to appoint a referee to compute were granted on March 18, 2016, and entered March 23, 2016, respectively. (*Id*. ¶ 41.) The Judgment of Foreclosure and Sale was entered December 5, 2016. (*Id*. ¶ 42.) Plaintiff alleges that during this time Defendants "willfully refused to provide any discovery to Plaintiff and her attorneys." (*Id*. ¶ 43.)

On May 18, 2017, Plaintiff's new attorneys, The Hilpeti Law Offices, forwarded a letter to Defendant Shapiro, DiCaro & Barak LLC, requesting an adjournment of the foreclosure sale subject to a modification application. Plaintiff contested Nationstar's use of "BPO" to "determine price versus an actual appraisal." (*Id*. ¶ 44.) Plaintiff alleges that Nationstar inflated the value of the property, (*id.*), and that they did so to avoid federal tax liability, (*id.* ¶ 45). Plaintiff alleges that although Defendants claimed that Plaintiff's primary residence located at 144 Lee Avenue, Yonkers, New York was appraised at $550,000, Plaintiff obtained a professional appraisal showing that the property was worth only $390,000. (*Id*. ¶¶ 38, 44.)

On November 1, 2017, the Hilpert Law Offices sent a letter to Defendants Shapiro, DiCaro & Barak, LLC, specifically to attorney Austin Shufelt, Esq., indicating that Nationstar had failed to comply with discovery demands which were due on October 6, 2017 and extended by the state court's leave on October 26, 2017. (*Id*. ¶ 47.) The letter further stated that Plaintiff's counsel was going to move to dismiss Nationstar's initial foreclosure pleadings and was seeking a compliance conference. (*Id*.) Plaintiff alleges that this letter is evidence that "Nationstar failed to establish proof of its pre-litigation possession of the original note." (*Id*.)

On November 1, 2017, Defendant Shapiro, DiCaro & Barak, LLC, "thumbed their noses at the Court and Plaintiff . . . and her counsel, and filed a Notice of Sale." (*Id.* ¶ 49.)

Plaintiff alleges Nationstar failed to comply with "foreclosure prevention loan servicing requirements imposed by the National Housing Act, 12 U.S.C. § 1701x(c)(5), which requires all private lenders servicing non-federally insured home loans . . . to advise borrowers, of any home ownership counseling Defendant offers together with information about counseling offered by the U.S. Department of Housing and Urban Development." (Compl. ¶ 21.) Plaintiff also alleges that Nationstar never provided any discovery to Plaintiff or her former attorneys that showed that Nationstar complied with 12 U.S.C. § 170lx(c)(5). (*Id.* ¶ 24.) Plaintiff argues that Nationstar's non-compliance with the law's requirements is "an actionable event that prevented it from filing any foreclosure action" against Plaintiff, (*id.* ¶ 23), and that therefore Nationstar brought the foreclosure action against Plaintiff in violation of federal law, and in breach of Nationstar's obligation to act in good faith and to deal fairly with Plaintiff, (*id.* ¶ 25.)

Plaintiff also alleges that Nationstar failed to provide her the right to inspect documents such as the Original "wet-ink mortgage Note," (the "Note") (*id.* ¶ 31), and that Nationstar never did produce the Note, (*id.* ¶¶ 27, 48).

The Assignment of the Mortgage from Mortgage Electronic Registration Systems, Inc. ("MERS") as Nominee For Greenpoint Mortgage Funding, Inc. and consolidation with Nationstar occurred on August 21, 2013 and was recorded on September 12, 2013. (*Id.* ¶ 46) Plaintiff alleges that the assignment from MERS voided and nullified the mortgage and Note because Plaintiff was never notified of any change in the mortgage contract that she originally signed. (*Id.* ¶ 3.)

Plaintiff further alleges that upon the assignment of the Note, it was paid in full, then destroyed, and now no longer exists. Defendants allegedly refused to provide Plaintiff with discovery to determine the existence and validity of the original Note. (Compl. ¶ 4.)

Plaintiff alleges that Nationstar "has securitized and sold the Note several times over . . . perhaps dozens of times when it includes claims of securitization of derivative products." (*Id*. ¶ 51.) As a result, her one mortgage loan "sits at the bottom of a house of cards larger than can be imagined. For example, the $463,900[] in value of the Mortgage is in reality potentially $9 [Million] [to] $10 [Million] . . . in direct cost that must somehow be hidden in yet another fraudulent cover-up ("re-securitization")." (*Id*.) "Plaintiff is entitled to between $9 [Million] and $10 [Million] because of the cover-up and fraud of re[-]securitization by Nationstar." (*Id*.)

Plaintiff alleges that the securitization and sale of her mortgage note is evidence that the mortgage on her property had been paid in full, and that any further attempts at collection on the fraudulent and void Note were criminal acts by Nationstar, and an attempt at "double dipping" or "triple dipping" for multiple payments on the same mortgage instrument. (*Id*. ¶ 6.)

Plaintiff alleges that Nationstar, "on multiple occasions from 2011 onwards, fraudulently misled [her] that she would enter into forbearance, HAMP, 'In-House Modification' and other agreements. Defendant never complied or initiated said agreements." (*Id*. ¶ 20.)[3]

Plaintiff makes a number of other general allegations. For example, Plaintiff alleges that Nationstar engaged in "predatory lending, illegal securitization of her mortgage note, and bundling of the note with other securitized notes/instruments to be sold off to other banks, lending institutions and/or investors/investment institutions for profit." (*Id*. ¶ 6.) Plaintiff alleges that Defendants willfully refused to validate the mortgage debt, (*id*. ¶¶ 26, 32), failed to

---

[3] Plaintiff does not define HAMP or In-House Modification agreement.

provide Plaintiff substantive and procedural due process, (*id.* ¶ 29), and failed to protect Plaintiff's property rights, (*id.* ¶ 30).  Plaintiff alleges that during the foreclosure proceedings "there was no verification of the debt, no discovery, [and] no production of the . . . Note," (*id.* ¶ 2), and that the mortgage documents were fraudulent and therefore void in any event, (*id.* ¶ 3).

### B.  Procedural Background

Plaintiff filed her Complaint on December 1, 2017.  (Compl.)  That same day Plaintiff filed a request for an order to show cause for a preliminary injunction to prevent the foreclosure sale of her home from going forward.  (Dkt. No. 6.)  On December 4, 2017, the Court denied Plaintiff's request for a preliminary injunction because she failed to show a likelihood of success on the merits because the Court's jurisdiction was in serious doubt under the *Rooker-Feldman* doctrine.  (Dkt. No. 4.)

On December 22, 2017, counsel for Nationstar submitted a pre-motion letter to the Court requesting permission to file a Motion to Dismiss.  (*See* Letter from Laurence P. Chirch, Esq., to Court (Dkt. No. 9).)  On January 3, 2018, the Court adopted a briefing schedule.  (Dkt. No. 10.)

On February 5, 2018, Nationstar filed its Motion To Dismiss and accompanying papers. (Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 12); Decl. of Laurence P. Chirch, Esq. ("Chirch Decl.") (Dkt. No. 13)).

On March 5, 2018, Plaintiff submitted a document titled "Plaintiff's Cross-Notice of Motion to Strike and Dismiss Defendants' Notice of Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.CIV.P 12(b)(1) and 12(b)(6) and Plaintiff's Motion for Summary Judgment Pursuant to F.R.CIV.P. Rule 56." (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s

Mem.") (Dkt. No. 14).)[4]  Plaintiff submitted numerous exhibits along with her response, most of which were already attached to her Complaint.  (Decl. of Grace Borrani ("Pl.'s Decl.") (Dkt. No. 16).)

On March 26, 2018, Nationstar filed its Reply in Further Support of it Motion To Dismiss.  (*See* Def.'s Mem. of Law in Further Supp. of Mot. To Dismiss ("Def.'s Reply") (Dkt. No. 17).)

## II.  Discussion

### A.  Standard of Review

Nationstar moves to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* Not. of Mot.)

"The standards of review under Rules 12(b)(1) and 12(b)(6)  . . . are substantively identical."  *Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (quotation marks omitted) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (citation and quotation marks omitted).  However, "[o]n a Rule 12(b)(1) motion,  . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)."  *Id.*

---

[4] This submission closely resembles a Memorandum in Opposition to Defendant's Motion To Dismiss and the Court will treat it as such.  The Court is unclear as to why Plaintiff labeled her submissions in response to Defendant's Motion to Dismiss as summary judgment filings or motions.  Plaintiff did not seek leave from this court to file a motion for summary judgment as is required by the Local Rules.

(citing *Lerner*, 318 F.3d at 128); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (citation and quotation marks omitted)).  This allocation of the burden of proof is the "only substantive difference" between the standards of review under these two rules.  *Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009).

### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998))).  "In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings." *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

## 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [her complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is filed by a pro se plaintiff, the Court may

consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents that the plaintiff[] either possessed or knew about and upon which [he or she] relied in bringing the suit," *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *see also Vlad-Berindan v. MTA New York City Transit*, No. 14-CV-675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (collecting cases and holding that a court may rely on factual allegations raised for the first time in a pro se plaintiff's opposition papers if consistent with the allegations in the complaint).

B. Analysis

Nationstar argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, (Def.'s Mem. 5–8), res judicata, (*id*. at 8–10), and collateral estoppel, (*id*. at 10–11), and alternatively, that Plaintiff has failed to state a claim, (*id*. 14–18).

1. The *Rooker-Feldman* Doctrine

Nationstar argues that the Court lacks subject matter jurisdiction over Plaintiff's claims because they are all barred by the *Rooker-Feldman* doctrine. (*See* Def.'s Mem. 8.) "Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (quotation marks omitted). In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments." *Id.* at 284.

After *Exxon Mobil*, the Second Circuit reexamined *Rooker-Feldman* and laid out four conditions

that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter

jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must

complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district

court review and rejection of that judgment"; and (4) "the state-court judgment must have been

rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of

Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and quotation marks omitted); *see also

Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same). "The

Second Circuit has classified the first and fourth requirements as 'procedural' and the second and

third requirements as 'substantive.'" *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL

3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

There is no question that the procedural requirements are met here. Plaintiff lost in state

court and the state court Foreclosure Judgment was entered on December 5, 2016, nearly a year

before this Action was commenced on December 1, 2017. (Compl. ¶ 1.)

Therefore, if Plaintiff's Amended Complaint merely "complain[s] of injuries" caused by

the state-court foreclosure judgment and seeks this Court's "review and rejection of" that

judgment, then Plaintiff's claims satisfy the substantive requirements of *Rooker-Feldman* and

this Court lacks subject matter jurisdiction over them. *Hoblock*, 422 F.3d at 85 (quotation marks

omitted); *see also Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *3

(S.D.N.Y. Apr. 17, 2013) (same). The Second Circuit has explained that the requirement that a

plaintiff's injuries be caused by the state judgment is the "core requirement" of the *Rooker-

Feldman* doctrine. *Hoblock*, 422 F.3d at 87. Accordingly, *Rooker-Feldman* would not prevent

Plaintiff from "raising federal claims based on the same facts as a prior state case . . . so long as . . . [P]laintiff complains of an injury *independent of* an adverse state court decision." *Scott*, 2013 WL 1655992, at *3; *see also McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) ("What *Exxon Mobil* and *Hoblock* do make clear is that the applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . , but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court.").  Such an "independent claim" is not barred by *Rooker-Feldman*, even if the claim "denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Exxon*, 544 U.S. at 293 (quotation marks omitted); *see also Hoblock*, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits.").

This is not the first time that a mortgagor has filed a suit in federal court after a state court issued an adverse foreclosure judgment.  Faced with similar suits, "[c]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Webster v. Wells Fargo Bank, N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (quotation marks omitted), *aff'd sub nom. Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012); *see also Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (same); *Campbell v. Bank of N.Y. Trust Co., N.A.*, No. 11-CV-1588, 2012 WL 2952852, at *7 (S.D.N.Y. May 8, 2012) (same), *adopted by* 2012 WL 2953967 (S.D.N.Y. July 18, 2012); *Murphy v. Riso*, No. 11-CV-873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (same).  As the Second Circuit has put it, *Rooker-Feldman* precludes a district court from entertaining a suit that "would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error."

*Vossbrinck*, 773 F.3d at 427. This is true even if, as here, a plaintiff contends that "the foreclosure judgment was obtained fraudulently." *Id.*; *see also Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 517 (D. Conn. 2015) ("[E]ven if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding." (quotation marks omitted)), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat'l Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016). However, "to the extent [Plaintiff's] pro se complaint can be liberally construed as asserting fraud claims . . . seek[ing] damages . . . for injuries [Plaintiff] suffered from [Defendant's] alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment," such claims "are not barred by *Rooker-Feldman*." *Vossbrinck*, 773 F.3d at 427–28 (italics omitted); *see also Deutsche Bank*, 632 F. App'x at 34 ("To the extent [the] plaintiffs' complaint can be liberally construed to allege injury stemming from the same transaction but not directly caused by the foreclosure judgment, their claims are not barred by *Rooker-Feldman*." (emphasis omitted)).

Here, read as a whole, Plaintiff's Complaint appears to allege that Defendants engaged in a pattern of submitting fraudulent and improperly authenticated documents related to the December 5, 2016 Judgment of Foreclosure and Sale in the state court, and failed to produce certain materials and witnesses, most notably the original Note, to Plaintiff. (Compl. ¶¶ 2–3, 34–35, 41–42, 44.) Plaintiff alleges that the mortgage on the property had actually been paid in full and that Nationstar's attempts at collection were fraudulent. (*Id.* ¶ 6.) Plaintiff's Complaint appears to allege that any declaration of default or order of foreclosure was erroneous because of Defendants' fraud, noncompliance with discovery requests, and the state court's consideration of fraudulent and improperly authenticated documents. "Therefore, in this action . . . [P]laintiff is seeking to undo the 20[16] state court judgment based upon what [P]laintiff argues was a pattern

of allegedly fraudulent activity, and the [C]omplaint can be construed as alleging injuries that occurred as a result of the judgment." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).

In her RICO claims (Counts One, Two, and Three), Plaintiff alleges that Defendants "filed a fraudulent foreclosure, false letters, and other false documents with the courts of the State of New York and county clerks to promote their scheme to defraud the Plaintiff, the public, and the judiciary to *fictionalize foreclosures* in the name of parties' without standing." (Compl. ¶ 55 (emphasis added).) In her wire fraud claim (Count Four), Plaintiff alleges that Defendants "accomplished and completed their fraudulent scheme to defraud the public and judiciary by using the wires via e-mail, the web and faxing their *fraudulent foreclosure* documents and related letters." (*Id*. ¶ 72 (emphasis added).) In her fraud and deceit claim (Count Five), Plaintiff alleges that Defendants' "scheme obstruct[ed] justice by corruptly influencing, obstructing, and impeding, and endeavoring to influence, obstruct, and impede the due administration of justice in *fraudulent foreclosure* suit(s)." (*Id*. ¶ 75 (emphasis added).) In her intentional and/or negligent infliction of emotional distress claim (Count Nine), Plaintiff alleges that "[t]he aforesaid misconduct of the fraudulent and *unlawful foreclosure on her sole residence* proximately caused Plaintiff to suffer emotional distress so severe that no reasonable person could be expected to endure it."[5] (*Id*. ¶ 89.)

---

[5] The Court notes that Plaintiff expressly asks this Court to review the state court's judgment because she claims she "was deprived of the right to cross-examine out-of-state . . . witnesses . . . . [and] [t]here was no [] full and fair hearing . . . ." (Pl.'s Mem. 10.) Plaintiff alleges that she "cannot fully and fairly litigate her claims in the New York State Unified Court System because the State Supreme Court has gone against the body of law in Plaintiff's favor." (Pl.'s Mem. 15.) However, Plaintiff fails to explain why she could not raise these points in an appeal in state court. *See Esposito v. New York*, No. 07-CV-11612, 2008 WL 3523910, at *13 (S.D.N.Y. Aug. 8, 2008) ("If plaintiffs are correct that the state courts acted unconstitutionally,

Each of these claims is thus expressly based on the state court judgment of foreclosure. Plaintiff alleges that the fraudulent nature of the documents and Defendants' fraudulent behavior undermines the outcome of the state court proceeding that resulted in the foreclosure judgment. Plaintiff is asking this Court to review the evidence submitted to the state court and to determine whether the state court properly considered and ruled on the evidence before it. Plaintiff also alleges that she suffered distress and that Defendants' unjustly benefited from Defendants conduct in obtaining and enforcing the state foreclosure judgment. Construed this way, the state court judgment was the cause of Plaintiff's injuries, and this Court would necessarily have to review that judgment to decide Plaintiff's claims.

Given these factual allegations, which are inextricably intertwined with the state court judgment and would require overturning the state court judgment, this Court concludes that the substantive requirements of the *Rooker–Feldman* doctrine are met with respect to Counts One, Two, Three, Four, Five, and Nine. *See Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) (holding that plaintiff's FDCPA, Connecticut Consumer Credit Protection Act, and Connecticut Unfair Trade Practices Act claims were "inextricably intertwined" with the state court determinations despite the defendant's alleged deception); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 503–04 (S.D.N.Y. 2016) (holding that mortgagor's claims against bank alleging violations of securities laws, debt collection laws, and the False Claims Act, were barred under *Rooker-Feldman* doctrine, where mortgagor's claims in federal court sought to review the state court's judgment of foreclosure on the grounds that the assignments were invalid and that the bank had no right to the property at issue); *Swiatkowski,* 745 F. Supp. 2d at 165

---

their proper recourse is to appeal to the higher courts of the state and then, if necessary, to the United States Supreme Court.").

(holding that the substantive requirements of the *Rooker–Feldman* doctrine were met so as to bar mortgagor's §§ 1981, 1982, 1983, and RICO claims against mortgagee where mortgagor was seeking to undo prior state court judgment based upon an alleged pattern of allegedly fraudulent activity); *see also Johnson v. Smithsonian Inst.*, 189 F.3d 180, 186–87 (2d Cir. 1999) (stating that there was no "blanket fraud exception to *Rooker–Feldman*"). This is not a case in which the Court can liberally construe Plaintiff's fraud allegations to not be related to the foreclosure proceeding—Plaintiff expressly relates her claims to the foreclosure proceedings.

Liberally construed, Counts Six, Seven, and Eight, however, assert claims for injuries Plaintiff suffered from Defendants' alleged fraud that do not require this Court to sit in review of the state court judgment. In her FDCPA claim (Count Six), (Compl. ¶¶ 76–78), and in her TILA and RESPA claims (Count Seven), (*id.* ¶¶ 79–81), Plaintiff alleges wrongdoing that predates the foreclosure judgment and that could plausibly be alleged in support of her FDCPA, TILA, and RESPA claims. Plaintiff alleges that her note was paid in full and destroyed, (*id.* ¶¶ 4, 6), that there were improper transfers of her mortgage that nullified it, (*id.* ¶ 3), and that Nationstar securitized and resold the note several times for a profit without Plaintiff's approval, (*id.* ¶ 51). In her unjust enrichment claim (Count Eight), Plaintiff alleges that "[b]y defrauding Plaintiff with a fraudulent mortgage and Note, failure to produce the Original Note, and securitized and bundled the Note as a security with other Notes and re[-]securitized it over and over again, with a multiplier effect of at least 20 times the value of the alleged mortgage, Defendants are liable for full restitution to Plaintiff for the re-securitization amount." (*Id.* ¶ 85.) To the extent that Plaintiff's Complaint can be read to allege fraud in the securitization and transfer of the note, any injury from that conduct "existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." *McKithen*, 481 F.3d at 98. Accordingly, the

substantive requirements of the *Rooker-Feldman* doctrine are not met with respect to Counts Six, Seven, and Eight. *See Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 276 (S.D.N.Y. 2018) (holding that *Rooker-Feldman* doctrine did not bar mortgagor's fraud in the concealment claim brought against bank and mortgage association for failure to disclose that mortgagor's note would be securitized because those claims would not require the court to review the foreclosure action); *Pennicott v. JPMorgan Chase Bank. N.A.*, No. 16-CV-3044, 2018 WL 1891312, at *4 (S.D.N.Y. Apr. 18, 2018) (holding that "[p]laintiff's claim for fraud in the concealment alleges she suffered damages because defendants concealed the fact that the mortgage loan was securitized," ant that such claims are not barred by *Rooker-Feldman*, because they "do not require a ruling that the foreclosure was improper"); *Beasley v. Indy Mac Bank*, No. 16-CV-4629, 2018 WL 1611667, at *7 (E.D.N.Y. Feb. 26, 2018) ("[T]he conduct underlying [p]laintiff's claims for fraud, fraudulent inducement, and violations of TILA is causally linked to the foreclosure proceeding and judgment. However, a liberal reading of [p]laintiff's pro se Complaint indicates that it is . . . the alleged misrepresentations and failures to disclose related to the mortgage loan's origination, servicing, and securitization—for which [p]laintiff seeks redress, rather than the state court judgment itself."), *adopted by* 2018 WL 1611382 (E.D.N.Y. Mar. 31, 2018); *Mohamed v. World Sav. Bank, FSB*, No. 15-CV-5934, 2016 WL 8711440, at *4 (E.D.N.Y. Sept. 30, 2016) ("With respect to [p]laintiff's claims challenging the underlying loan transaction, her 'fraud in the concealment' and 'fraud in the inducement' claims might be barred by *Rooker-Feldman*, but only to the extent that they challenge the validity of the underlying mortgage and seek a ruling that it was void.").

Accordingly, *Rooker-Feldman* deprives the Court of subject matter jurisdiction over Plaintiff's RICO, wire fraud, fraud and deceit, and intentional and/or negligent infliction of emotional distress, but not Plaintiff's FDCPA, TILA, RESPA, and unjust enrichment claims.

### 2. Collateral Estoppel and Res Judicata

Nationstar argues that Plaintiff's "claims essentially amount to an attack on the Foreclosure Action and the judgment entered against Plaintiff therein, and they all constitute claims and allegations that either were raised or could have been raised within the confines of the Foreclosure Action." (Def.'s Mem. 8–11.)

Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Swiatkowski*, 745 F. Supp. 2d at 168 (quotation marks omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (quotation marks omitted)). Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen*, 481 F.3d at 105 (quotation marks omitted); *see also Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (same). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58

F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

The preclusive effect of res judicata is broader than that of collateral estoppel. Under the doctrine of res judicata, otherwise known as claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quotation marks and emphasis omitted) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)). At its core, res judicata "is a rule against the splitting of actions that could be brought and resolved together." *Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 (2d Cir. 2006).

> Under New York law, the doctrine of claim preclusion [or res judicata] bars litigation of claims or defenses that [1] were or could have been raised in a prior proceeding where that prior proceeding [2] resulted in a final judgment [3] on the merits and arose out of the same factual grouping as the later claim, even where the later claim is based on different legal theories or seeks dissimilar or additional relief.

*L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs*, 345 F. Supp. 2d 405, 409–10 (S.D.N.Y. 2004); *see also Hinds v. Option One Mortg. Corp.*, No. 11-CV-6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (noting that "New York has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief" (italics and quotation marks omitted)), *adopted by* 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013).

"This transactional doctrine also applies to defenses that could have been litigated in a foreclosure action." *Hinds*, 2012 WL 6827477, at *5 (quotation marks omitted); *see also Beckford v. Citibank N.A.*, No. 00-CV-205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (same). Accordingly, "[a] [f]oreclosure [j]udgment is final as to all questions at issue between

. . . parties, and concludes all matters of defense that were or might have been litigated in the [f]oreclosure [a]ction." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 147 (E.D.N.Y. 2016); *see also Drew v. Chase Manhattan Bank, N.A.*, No. 95-CV-3133, 1998 WL 430549, at *6–7 (S.D.N.Y. July 30, 1998) ("Under New York law[,] '[a] state court judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded.'" (alteration omitted) (quoting *Gray v. Bankers Tr. Co.*, 442 N.Y.S.2d 610, 612 (App. Div. 1981))).

Here, it is undisputed that the earlier state court action, which included a Final Judgment of Foreclosure and Sale, was a previous adjudication on the merits between Plaintiff and Nationstar.[6]  To determine whether res judicata and collateral estoppel bar Plaintiff's claims, the Court must ask whether and to what extent Plaintiff's claims were or could have been raised before the state court.

Plaintiff alleged several affirmative defenses in her Answer and Counterclaim in the state foreclosure proceedings.[7]  Specifically, Plaintiff's affirmative defenses were that Nationstar: lacked standing because it was not the true and lawful owner of the Note and had misrepresented the facts to the court in order to obtain standing, (Chirch Decl. Ex. E (Plaintiff's Answer, Affirmative Defense, and Counterclaim to State Foreclosure Action at ¶¶ 1–8 ("Pl.'s Answer") ("Pl.'s Defense") ("Pl.'s Counter.")); was not the holder-in-due course of the underlying note,

---

[6] The previous action did not involve Defendant Shapiro, DiCaro & Barak, LLC, other than in their capacity as Nationstar's attorneys.

[7] Plaintiff's response in the state foreclosure action contains three separate sections, specifically her Answer, her Affirmative Defense, and her Counterclaim.  Paragraph numerations begins again in each section, and therefore the Court refers to the sections and paragraphs therein separately.

(*id.* ¶¶ 9–12); failed to provide adequate and required notices to Plaintiff, (*id.* ¶¶ 13–14); failed to give annual accountings of the funds in Plaintiff's escrow account, (*id.* ¶¶ 15–16); had attorneys who failed to provide affirmations showing that they had personal knowledge of the documents submitted to the court, (*id.* ¶¶ 17–19); failed to conduct required due diligence to determine Plaintiff's ability to repay the loan, (*id.* ¶¶ 20–26); filed false, fraudulent, unlawful documents to expedite the foreclosure, (*id.* ¶¶ 27–28); previously "sold, assigned, or transferred," and securitized the Note, (*id.* ¶¶ 30–31); and joinder, (*id.* ¶ 32), false pretenses, (*id.* ¶ 33), and a request for attorneys' fees, (*id.* ¶¶ 34–35).

Plaintiff's state counterclaims included "violations of . . . TILA . . . violations of Regulation Z, violations of New York Banking Law, Article 12-D § 419 since [Nationstar] received large amounts of Federal funding for said programs." (Compl. ¶ 19.) Plaintiff's first and second counterclaims in her state court Answer and Counterclaim alleged violations of TILA, including failing to provide Plaintiff with the appropriate number of "Notice of Rights to Cancel" and failing to accurately disclose the finance charges of the closing. (Pl.'s Counter.¶¶ 5–17.) In her third counterclaim, Plaintiff specifically alleged that since 2011 Nationstar repeatedly misled Plaintiff that she could enter into forbearance, HAMP, and "In-House Modification." (*Id.* ¶ 21.) In her fifth counterclaim, Plaintiff alleged that Nationstar failed to comply with the foreclosure prevention loan servicing requirement imposed on it pursuant to the National Housing Act, 12 U.S.C. 1701x(c)(5). (*Id.* ¶ 28.)

Plaintiff's filings in state court were thus replete with allegations that Nationstar committed fraud, submitted unauthenticated and fraudulent documents, improperly transferred the Note and Plaintiff's mortgage, and that Nationstar did not in fact own or produce the Note. These same allegations are the basis of Plaintiff's RICO, wire fraud, and fraud and deceit claims

before this Court.  The Court thus finds that Plaintiff's claims are barred by res judicata and

collateral estoppel.  In her Action before this Court, Plaintiff expressly bases her unjust

enrichment claim on Nationstar's alleged conduct in improperly transferring and securitizing her

mortgage to make a profit without her approval and knowledge.  (Compl. ¶¶ 3, 51.)  However,

Plaintiff also raised this as an affirmative defense before the state court, where she argued that

Nationstar had previously "sold, assigned, or transferred" the Note, and that the Note had been

improperly securitized.  (Pl.'s Defense ¶ 30–31).  Plaintiff does plead a few additional details

about these transfers and the alleged value of the securitized Note in her Complaint here—but

this does not mean that the allegation was not squarely raised below, or that the additional facts

pleaded before this Court, could not have been raised before the state court.  *See Hinds*, 2012

WL 6827477, at *5 (holding that res judicata bars claims "that could have been litigated in a

foreclosure action.")  As for Plaintiff's TILA claims, she actually provided greater detail

regarding alleged TILA violations in her state court filings than she does here.  (*See* Pl.'s

Counter.¶¶ 5–17.)  Thus, these claims are barred.  *See Hourani*, 158 F. Supp. 3d at 147

(E.D.N.Y. 2016) (holding that res judicata bars claims that "were or might have been litigated in

the [f]oreclosure [a]ction").

As for Plaintiff's RICO, FDCPA, and RESPA claims, this Court concludes that Plaintiff

could have raised those claims before the state court.

> Whether cast as violations of RICO, FDCPA, CFPA, RESPA, or of any of the
> numerous state laws enumerated in the Complaint, [Plaintiff] effectively alleges
> that defendants improperly obtained the Foreclosure Judgment through conspiracy
> and fraud . . . However, [Plaintiff] asserted these claims in the State Action in her
> . . . verified answer . . . Specifically, she raised a variety of affirmative defenses
> purporting to attack the validity of the underlying mortgage and the propriety of the
> State Action.

*Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *7 (E.D.N.Y. March 11, 2016). Plaintiff makes no allegations as to why she could not have raised her RICO, FDCPA, and RESPA claims along with all her other affirmative defenses and counterclaims before the state court. Indeed, with a few exceptions, Plaintiff alleges the same facts in her Complaint in this Action as she did in her affirmative defenses and counterclaims before the state court, thus making for a clean application of res judicata. *See Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422–23 (S.D.N.Y. 2008) (holding that a state court decision granting mortgagee summary judgment on foreclosure action precluded mortgagors' RESPA claim because mortgagors could have presented the same claims asserted in federal action, including the RESPA claim); *Beckford*, 2000 WL 1585684, at *4 (holding that RESPA claim was barred because it was available to plaintiff during the state foreclosure proceedings).

Accordingly, in addition to the *Rooker-Feldman* doctrine, collateral estoppel and res judicata serve as alternative bases for this Court to dismiss Plaintiff's RICO, wire fraud, and fraud and deceit claims. Plaintiff's FDCPA, RESPA, TILA, and unjust enrichment claims are also barred by the collateral estoppel and res judicata doctrines.[8] *See Nath v. Select Portfolio Servicing, Inc.*, No. 15-CV-8183, 2017 WL 782914, at *10–11 (S.D.N.Y. Feb. 28, 2017) (holding that res judicata and collateral estoppel barred plaintiff from re-litigating defendant's

---

[8] Plaintiff cites to the *Restatement (Second) of Judgments* § 28, which outlines five exceptions to the collateral estoppel doctrine and argues that she fits into several of the categories. (Pl.'s Mem. 16–17.) Plaintiff specifically argues that she could not appeal the state court decision because the cost was prohibitive, and that she could not navigate the complex state appeal process by herself. (*Id*. at 17.) Plaintiff does not, however, allege that filing a claim in federal court was less costly (she is not proceeding in forma pauperis in this Action), or that she was somehow better able to navigate filings in the federal court system. Plaintiff also alleges that she did not have adequate opportunity to obtain a full and fair adjudication of her case in state court because the state "trial judge did not care about or observe Plaintiff's substantive and due process rights." (*Id*.) Such conclusory and self-serving claims do nothing to change the result here.

standing and the validity of a loan modification agreement where the state court had considered those issues during plaintiff's state foreclosure proceeding); *Swiatkowski*, 745 F. Supp. 2d at 169–73 (holding that res judicata and collateral estoppel barred mortgagor from re-litigating allegations of federal violations by mortgagee associated with alleged submission of fraudulent documents in related bankruptcy court proceedings in action, alleging violations of mortgagor's constitutional rights, as well as violation of RICO); *Hourani*, 158 F. Supp. 3d at 147–49 (holding that collateral estoppel barred mortgagor's claims against mortgagee of fraud, bad faith, and breach of agreement).

Because the Court dismisses Plaintiff's claims based on *Rooker-Feldman*, collateral estoppel, and res judicata grounds, it need not consider Nationstar's argument that Plaintiff otherwise fails to state a claim. (Def.'s Mem. 14–18.)

### III. Conclusion

For the foregoing reasons, Nationstar's Motion to Dismiss is granted. Plaintiff is given 30 days from the date of this Opinion and Order to file an amended complaint curing the deficiencies identified above. Failure to file an amended complaint within 30 days will result in the dismissal of this Action with prejudice. Within 60 days of filing an amended complaint, Plaintiff must effectuate service upon Defendant Shapiro, DiCaro & Barak, LLC, or Plaintiff risks having them dismissed from the case.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No.

18), and mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:     March 29, 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE